IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CLIFTON COLLINS, | § | |
| | § | |
| Plaintiff | § | |
| | § | |
| v. | § | Civil Action No. 3:11-CV-2349-BK |
| | § | |
| MICHAEL J. ASTRUE, | § | |
| Commissioner of Social Security, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION

The parties having consented to proceed before the magistrate judge (Doc. 24), the Court now considers their cross motions for summary judgment.  For the reasons that follow, Plaintiff's *Motion for Summary Judgment* (Doc. 27) is **GRANTED**, Defendant's *Motion for Summary Judgment* (Doc. 30) is **DENIED**, the Commissioner's decision is **REVERSED,** and the case is **REMANDED** for further proceedings.

### I. BACKGROUND[1]

**A.    Procedural History**

Clifton Collins ("Plaintiff") seeks judicial review of a final decision by the Commissioner denying his claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act (Act).  Plaintiff protectively filed his applications for DIB and SSI, alleging that he became disabled in June 2008.  (Tr. 135, 142).  His applications were denied at all administrative levels, and he timely appealed to the United States District Court

---

[1] The following background comes from the transcript of the administrative proceedings, which is designated as "Tr."

1

pursuant to 42 U.S.C. § 405(g). (Tr. 3-5, 12-25, 79, 88). In the meantime, Plaintiff filed another application for Social Security benefits which was granted in January 2012. The ALJ in that case found Plaintiff disabled as of February 24, 2010, one day after the ALJ decision under review was entered. (Doc. 28, Exh. A; Tr. 12).

**B.     Factual History**

Plaintiff was 47 years old on his alleged onset date, and he had an 11th grade education and past work experience as a carpet installer and custodian. (Tr. 65, 174, 178). In June 2008, he was stabbed in the chest and arm with a screwdriver, which punctured his heart and caused a one centimeter laceration to the anterior portion of the right ventricle. (Tr. 247-50, 283, 514). He underwent a median sternotomy (incision through the midline of the sternum) to repair his wound, and he was discharged from the hospital after eight days.[2] (Tr. 283). Plaintiff reported in July 2008 that his level of pain was greatly improved (three on a ten-point scale, rather than the nine he felt when he was discharged from the hospital), but he still felt pain even after taking medication and felt worse when he moved around or tried to get up from a seated position. (Tr. 551).

In September 2008, state agency medical consultant Dr. Patty Rowley opined that Plaintiff could occasionally lift/carry 50 pounds; frequently lift/carry 25 pounds; stand/walk/sit for six hours in an 8-hour workday, and had no other physical or communicative limitations. (Tr. 348-55). In a stress test that month, Plaintiff could only exercise for four minutes before he had

---

[2] All medical terms are defined by reference to *Stedman's Medical Dictionary* (27th ed.), available on Westlaw.

to stop due to fatigue. (Tr. 519). The administering physician noted that Plaintiff experienced periodic sharp chest pain two to three times per week, which lasted for a few seconds and radiated from his front towards the left scapular area, and the physician believed the symptoms were musculoskeletal, rather than cardiac, in origin. (Tr. 514-15). Plaintiff had mild residual pain in the region of his scar and complained that he still had too much pain with movement to be able to work as a custodian, but his physician stated that he was close to being able to return to full, unrestricted activity from a medical standpoint. (Tr. 564).

Plaintiff had the same complaints of pain in October 2008. (Tr. 510). A CT scan of his chest performed that month revealed a small amount of soft-tissue fullness within the anterior mediastinum, which the doctor believed to be related to his surgery.[3] (Tr. 492, 510). Plaintiff continued to have numerous complaints about chest pain despite prescribed pain medication and therapies. (Tr. 328-334, 339-40, 356-58, 361-66, 492, 509, 513-15, 537-52, 554, 564-66, 792).

Plaintiff underwent a comprehensive outpatient pain management, physical therapy, and occupational therapy program in September and October 2008. (Tr. 357-59). Upon completion of the program, Plaintiff demonstrated a 22% improvement in the distance he could walk, an 80% improvement in lower body strength, and an improvement in the amount of weight he could lift to between 25 and 45 pounds. (Tr. 358). The tenderness over his chest scar had decreased by 40% to 50%. (Tr. 358). Moreover, Plaintiff's ability to engage in activities of daily living had increased from 1.2 to 7.4 out of 10, and the pain management administrator opined that he had no physical limitations that prevented him from working. (Tr. 358). Finally, Plaintiff's depression

---

[3] The anterior mediastinum is the narrow region between the pericardium posteriorly and the sternum anteriorly containing the thymus or its remnants, some lymph nodes and vessels, and branches of the internal thoracic artery.

was reduced by 50% from the moderate range to the mild range, although Plaintiff had an unfounded fear of cardiac problems and a perception of himself as physically limited in his ability to work. (Tr. 358-59).

In November 2008, Plaintiff reported that his chest pain was gradually improving, and his physician stated that he needed no further work-up from a cardiological standpoint. (Tr. 509). That same month, Plaintiff was diagnosed with a 1.5 centimeter umbilical hernia, as well as a four centimeter ventral hernia, after he complained of midline abdominal pain along his incision scar. (Tr. 463, 465, 495). Plaintiff's treating physician, Dr. Steven Johnson, stated in November 2008 that a CT scan showed that Plaintiff had an incision hernia four centimeters long, and Plaintiff stated that this ventral hernia caused him midline abdominal pain. (Tr. 495). Dr. Johnson found that Plaintiff had severe limitations of functional capacity and was incapable of even sedentary activity. (Tr. 496). By December 2009, the hernia had grown to 5x6 centimeters, and Plaintiff underwent surgery to repair it. (Tr. 809).

Plaintiff also has a history of depression for which he received treatment from Green Oaks Hospital, the Holiner Psychiatric Group, and his treating physicians from October 2008 until March 2009. (Tr. 359, 445-448, 456-58, 499, 667-671, 674, 681, 685, 691-693). In October 2008, he stayed in a psychiatric day hospital for four days due to his severe major depressive disorder, chronic pain, and homicidal and suicidal ideations during which he twice put a gun in his mouth. (Tr. 446-49, 453, 738). In the hospital, he was given the antidepressant Wellbutrin, and his mood was much improved upon discharge. (Tr. 453-54). However, by the following month he reported loss of appetite, loss of concentration, lack of interest and energy, and anxiety, so his Wellbutrin dosage was increased. (Tr. 445). He often presented with a

depressed affect and at times had suicidal thoughts. (Tr. 359, 445-448, 456, 667-671, 674, 681, 685, 691-693, 1114).

From September 2009 to March 2011, Plaintiff received mental health treatment at Dallas Metrocare Services, where he was diagnosed with severe, recurrent Major Depressive Disorder. (Tr. 732-48). Throughout the treatment records, Plaintiff is reporting as suffering from a depressed affect, chronic pain, suicidal thoughts, and feelings of worthlessness because of his inability to work and his mother's death. (Tr. 732-748, 993-94, 1006, 1009, 1112, 1024, 1031, 1033, 1045, 1060, 1062, 1066, 1072-73, 1085, 1091, 1093, 1099, 1105, 1112, 1123). Plaintiff's GAF score was consistently 45, and his treatment provider first increased his Wellbutrin and then combined it with Celexa in an effort to alleviate his increasing symptoms of depression.[4] (Tr. 735, 740, 747, 1057, 1099, 1128).

In January 2009, consulting non-examining psychologist Dr. Jim Cox opined that Plaintiff was markedly limited in his ability to understand and carry out detailed instructions and was moderately limited in his abilities to: (1) carry out short, simple instructions, (2) maintain attention and concentration for extended periods of time, (3) perform activities within a schedule and maintain regular attendance, (4) sustain an ordinary work routine without special supervision, (5) work with others without being distracted by them, (6) work a normal work week without interruption due to his psychological symptoms, and (7) interact appropriately with the public. (Tr. 485-88).

In October 2009, examining consultative psychologist Dr. George Mount completed a

---

[4] GAF stands for Global Assessment of Functioning, and is used to determine a patient's psychological functioning on a 1 to 100 scale, with 100 being superior functioning. *Diagnostic and Statistical Manual of Mental Disorders IV-TR* (4th ed.).

medical source statement indicating that Plaintiff had several extreme and serious limitations in his ability to function independently, appropriately, effectively, and on a sustained basis in terms of (1) following uninvolved instructions and problems involving even a few concrete variables, (2) maintaining concentration for two-hour intervals, (3) performing activities within a schedule, arriving punctually, and maintaining regular attendance, (4) completing a normal work week without interruption from psychologically-based symptoms, (5) coping with normal work stresses, and (6) responding appropriately to changes in the workplace.  (Tr. 751-52).

**C.**     **Hearing Testimony**

At his October 2009 administrative hearing, Plaintiff testified that on his alleged disability onset date, an acquaintance had stabbed him four times.  (Tr. 41-42).  He became depressed and suicidal as soon as he got out of the hospital because he lost his source of income, and he had to be admitted to a psychiatric hospital.  (Tr. 44-45).  Plaintiff stated that he continued to have sharp chest pains two to three times a day near the incision site, and he had a hernia on the left side of his abdomen that caused him pain of six to seven on a ten-point scale and constant shortness of breath.  (Tr. 48-49).

**D.**     **The ALJ's Findings**

In a decision dated February 2010, the ALJ found Plaintiff's impairments of incisional hernia, status post stab wound, and depression to be severe.  (Tr. 17, 20-25).  The ALJ determined that none of Plaintiff's impairments met or equaled a listed impairment, and he had the residual functional capacity ("RFC") to (1) lift a maximum of ten pounds, (2) sit for six hours in an eight-hour day, (3) stand/walk for two hours in an eight-hour day, (4) stand and change positions for two minutes every 30 minutes, (5) occasionally kneel and climb stairs, and (6) have

incidental contact with the public. (Tr. 19). The ALJ also found that Plaintiff could understand and carry out "detailed, but uninvolved written or oral instructions" involving concrete variables. (Tr. 19).

    The ALJ ruled that Plaintiff's complaints of pain and physical restrictions were not credible to the extent alleged because they conflicted with the medical evidence of record, which included normal chest x-rays, CT scans, and medical exams. (Tr. 20-21). The ALJ gave the opinion of Plaintiff's treating physician regarding total disability, Dr. Johnson, limited weight because it appeared to be based on Plaintiff's self-report that he could not work rather than the objective medical evidence in the record, and Dr. Johnson did not provide a function by function analysis of Plaintiff's limitations. (Tr. 23). Additionally, the ALJ appears to have given the opinion of state agency consulting physician Dr. Rowley only "some weight," noting that the opinions of the non-examining physicians supported a finding that Plaintiff was not disabled. (Tr. 23-24).

    Next, the ALJ determined that Plaintiff's depression was not severe because he responded well to prescription medications after his hospitalization, his thought processes were logical, and he did not have any hallucinations, delusions, or recent suicidal ideation. (Tr. 22). The ALJ found that Plaintiff could not return to his past relevant work, but ruled that he could perform unskilled sedentary work. Plaintiff's ability to do such work was constrained by certain exertional and non-exertional limitations, including that he could have only incidental contact with the public and his reasoning, math and language abilities were limited. (Tr. 24-25). The ALJ concluded that sufficient jobs existed in the national economy that Plaintiff could perform, such as clock and watch assembler, fishing reel assembler, and nut sorter. (Tr. 25).

E.    **Proceedings Before the Appeals Council**

On administrative appeal, Plaintiff's counsel submitted additional records to the Appeals Council as follows. In March 2010, his hernia scar was healing well. (Tr. 905). However, by May 2010, Plaintiff had a 3 centimeter bulge along his midline with straining and pain, and he reported experiencing chest pain with left arm radiation at least two to three times a week. (Tr. 902). An MRI revealed (1) midline epigastric subcutaneous reactive changes, (2) no definitive evidence of a recurrent hernia, (3) a right inguinal hernia, and (4) a small paraumbilical hernia. (Tr. 912). In July 2010, Plaintiff reported chest pains in the lower sternum region with fatigue upon exertion and with walking less than a block. (Tr. 951).

In November 2010, Plaintiff stated that he had occasional chest pain, which got better when he took Advil, and he requested a chest brace. (Tr. 933). A CT scan of his abdomen showed that his hernia had not recurred, but he was diagnosed with chest pain, which he had when getting out of bed, and gastroesophageal reflux disease, for which he was prescribed medication. (Tr. 934). In a November 2010 exam for disability assistance services, the evaluator reported that Plaintiff's abdominal region was large with a visible herniation occurring with increased pressure during certain mobility tasks. (Tr. 847). The evaluator noted that the "hernia is palpable when the client exerts intra-abdominal force," which was likely the result of a failed hernia repair. (Tr. 847-49). The evaluator determined that Plaintiff's pain was significantly limiting his transitional capabilities and functional mobility. (Tr. 849). A December 2010 treatment note remarked that Plaintiff's chest pain symptoms seemed consistent with reflux and post-surgical pain. (Tr. 866). An April 2011 treatment note suggested that the persistent chest pain could be due to the mesh placed for his ventral hernia repair. (Tr. 922). Plaintiff was

diagnosed with chest pain, reflux, and shortness of breath and continued on pain medication. (Tr. 921, 923).

In December 2010, during his continuing mental health treatment at Dallas Metrocare, Plaintiff stated that he would like to go back to work, but did not feel that he could because of his physical problems. (Tr. 1016-17). His counselor noted that he had a core belief that "if you work you are valuable, if you don't you aren't." (Tr. 1116). By March 2011, Plaintiff had seen a "huge decrease" in his mental health problems and was preparing for his last therapy session. (Tr. 1001-02).

In December 2010, psychiatrist Dr. Evan Knapp administered to Plaintiff a series of intelligence tests. During the testing, Plaintiff informed Dr. Knapp that he felt depressed all the time and had insomnia, and Dr. Knapp diagnosed him with Major Depressive Disorder, moderate and recurrent. (Tr. 857). In January 2011, Dr. Knapp completed a medical source statement indicating that Plaintiff had several extreme and serious limitations in his ability to function independently, appropriately, effectively, and on a sustained basis in terms of (1) following uninvolved instructions and problems involving even a few concrete variables, (2) maintaining concentration for two-hour intervals, (3) performing activities within a schedule, arriving punctually, and maintaining regular attendance, (4) completing a normal work week without interruption from psychologically based symptoms, (5) coping with normal work stresses, and (6) responding appropriately to changes in the workplace. (Tr. 915-16). In April 2011, Dr. Kristen Gable, Plaintiff's treating psychiatrist at Dallas Metrocare Services, completed a medical source statement, making similar findings in those abilities. (Tr. 1127-29). The Appeals Council summarily denied Plaintiff's appeal. (Tr. 3).

## II.  APPLICABLE LAW

An individual is disabled under the Act if, *inter alia*, he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" which has lasted or can be expected to last for at least 12 months.  42 U.S.C. § 423(d)(1)(A).  The Commissioner uses the following sequential five-step inquiry to determine whether a claimant is disabled:  (1) an individual who is working and engaging in substantial gainful activity is not disabled; (2) an individual who does not have a "severe impairment" is not disabled; (3) an individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors; (4) if an individual is capable of performing his past work, a finding of "not disabled" must be made; (5) if an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if any other work can be performed.  *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991); 20 C.F.R. §§ 404.1520(a)(4), 416.920 (a)(4).

Under the first four steps of the analysis, the burden of proof lies with the claimant. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).  The analysis terminates if the Commissioner determines at any point during the first four steps that the claimant is disabled or is not disabled.  *Id.*  If the claimant satisfies his burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that the claimant can perform.  *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).  This burden may be satisfied either by reference to the Medical-Vocational Guidelines of the regulations or by expert vocational testimony or other similar evidence.  *Fraga*

*v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).

Judicial review of the Commissioner's denial of benefits is limited to whether the Commissioner's position is supported by substantial evidence and whether the Commissioner applied proper legal standards in evaluating the evidence. *Greenspan*, 38 F.3d at 236; 42 U.S.C. §§ 405(g), 1383(C)(3). Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant and sufficient evidence as a reasonable mind might accept as adequate to support a conclusion. *Leggett*, 67 F.3d at 564. Under this standard, the reviewing court does not reweigh the evidence, retry the issues, or substitute its own judgment, but rather, scrutinizes the record to determine whether substantial evidence is present. *Greenspan*, 38 F.3d at 236.

### III. ARGUMENTS AND ANALYSIS

#### A. Whether the ALJ's Physical RFC Finding is Supported by Substantial Evidence

Plaintiff argues that it is unclear what evidence, other than her own lay opinion, the ALJ relied on in determining Plaintiff's physical RFC, and thus substantial evidence does not support the RFC finding. (Doc. 28 at 21). Plaintiff contends that the ALJ ignored the only two opinions given concerning his physical capabilities from (1) state agency consultant Dr. Rowley and (2) Plaintiff's treating source Dr. Johnson, and instead arrived at an RFC that was essentially a compromise of those two opinions. *Id.* at 22-23. By finding Dr. Rowley's opinion entitled to "some weight" and Dr. Johnson's opinion entitled to "limited weight," Plaintiff argues that the ALJ never specified what evidence supported her decision to reject the limitations contained in the doctors' assessments or what evidence supported her own RFC finding. In particular, Plaintiff maintains that the ALJ did not explain why she rejected Dr. Rowley's opinion that Plaintiff could perform medium work or why she came close to adopting the significant

limitations described by Dr. Johnson, but then settled at essentially a sedentary RFC based on her own lay opinion. Therefore, Plaintiff concludes that the ALJ failed to abide by the weighing scheme set forth in 20 C.F.R. § 404.1527 in adjudicating the medical opinion evidence. *Id.* at 24.

Defendant responds that the ALJ's physical RFC finding is supported by substantial evidence because Plaintiff healed well from his heart surgery, his chest pain steadily decreased thereafter, and despite his reports of fatigue and occasional shortness of breath through the fall of 2008, his cardiovascular and respiratory tests were normal, and his doctors felt that he was almost able to return to unrestricted activity. (Doc. 30 at 5-7). After his hernia diagnosis, Plaintiff's complaints of pain still were infrequent until he had elective surgery a year later, and there is no record of further complaints after that. *Id.* at 7-8. Defendant contends that the ALJ did not improperly reject Dr. Johnson's finding that Plaintiff was disabled because he had only seen Plaintiff twice, and Dr. Johnson's statement speaks to a legal conclusion that is reserved to the Commissioner. *Id.* at 8-9.

Plaintiff replies that the Commissioner cannot fix the ALJ's failure to include a narrative discussion describing how the medical opinion evidence supports her physical RFC finding by regurgitating the medical evidence and making *post hoc* rationalizations on the ALJ's behalf. (Doc. 31 at 2-3).

The RFC is an assessment, based on all of the relevant evidence, of a claimant's ability to do work on a sustained basis in an ordinary work setting despite his impairments. 20 C.F.R. §§ 404.1545(a), 416.945(a); *Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001). The RFC refers to the most that a claimant can do despite his physical and mental limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a). The ALJ is responsible for assessing the medical evidence and

determining a claimant's RFC.  20 C.F.R. §§ 404.1546(c), 416.946(c).  The ALJ must consider all medical evidence as well as other evidence provided by the claimant.  20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3).  The ALJ is permitted to draw reasonable inferences from the evidence in making her decision, but is not required to incorporate limitations in the RFC that she does not find to be supported in the record.  *See Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir. 1988) (holding that the ALJ could rely on portions of a vocational expert's answer without endorsing all of the expert's conclusions).  In assessing RFC, the ALJ must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not severe.  SSR 96-8p; 20 C.F.R. §§ 404.1523, 416.923.

      Plaintiff argues at length that the ALJ was obligated to either accept wholesale Dr. Johnson's or Dr. Rowley's opinion or to explain in detail why she rejected those opinions and formulated her own physical RFC assessment.  This assertion, however, is incorrect.  First, neither Dr. Rowley nor Dr. Johnson had the responsibility for assessing Plaintiff's RFC because the determination of a claimant's RFC is reserved for the ALJ.  *See* 20 C.F.R. §§ 404.1546(c), 416.946(c).  The ALJ must consider statements by a physician about what a claimant can still do despite his impairments because those opinions are an important consideration in assessing a claimant's RFC, but they are not determinative.  *See* 20 C.F.R. §§ 404.1513, 416.913 (stating that although the Commissioner will request a medical source statement about what a claimant can still do despite his impairment, the lack of such a statement will not render the medical record incomplete); 20 C.F.R. §§ 404.1527, 416.927 (describing how the Commissioner considers and weighs physician opinions).  Accordingly, there is no requirement that the ALJ's RFC finding mirror the opinion of either Dr. Rowley or Dr. Johnson.  *Morris*, 864 F.2d at 336.

Thus, the only remaining question is whether the ALJ's physical RFC finding was supported by substantial evidence, and the undersigned concludes that it was. *Leggett*, 67 F.3d at 564. The ALJ's determination (and Appeals Council's affirmance) that Plaintiff could (1) lift up to ten pounds, (2) sit for six hours in a work day, (3) stand/walk for two hours in a work day, and (4) occasionally kneel and climb stairs, is supported by the fact that within four months of his injury, Plaintiff had made dramatic improvements in his ability to walk, his physical strength, and in his ability to engage in daily activities of life. (Tr. 19, 357-59). Indeed, Plaintiff's pain management administrator opined that he had no physical limitations that would prevent him from working, and he sought virtually no treatment for his subsequent hernia for over a year until he underwent surgery. (Tr. 357-59, 495, 809).

Thereafter, while Plaintiff was diagnosed with another hernia, he had only occasional chest pain which most of his doctors believed was caused by reflux and was treated with medication. (Tr. 866, 912, 921, 923). The ALJ noted many of these underlying facts in explaining the basis for her RFC determination. (Tr. 19-21). This case is thus unlike *Ripley v. Chater*, 67 F.3d 552, 557-58 (5th Cir. 1995) on which Plaintiff relies, because in *Ripley* the appellate court held that an ALJ may not – without opinions from medical experts – derive a claimant's RFC solely from a claimant's medical records. The Commissioner's decision regarding Plaintiff's physical RFC is supported by substantial evidence. *Leggett*, 67 F.3d at 564.

**B.**  **<u>Whether the ALJ's Mental RFC Finding is Supported by Substantial Evidence</u>**

Plaintiff next argues that the ALJ, in formulating Plaintiff's mental RFC, erroneously rejected the opinions of state agency consulting psychologist Dr. Cox and examining consultative psychologist Dr. Mount. (Doc. 28 at 25). In particular, Plaintiff notes that the ALJ ruled that he

could do detailed work even though Dr. Cox found that he was markedly limited in that regard. *Id.* at 26. Additionally, Plaintiff maintains that Dr. Mount found he had a substantial loss in his ability to respond appropriately to changes in a routine work setting, which is one of the requirements for performing competitive, remunerative, unskilled work. *Id.* at 26-27 (citing SSR 85-15). Similarly, Plaintiff maintains, the Appeals Council erred in rejecting the opinions of consultative examiner Dr. Knapp and Plaintiff's treating psychiatrist Dr. Grable, who both found that Plaintiff was limited in various ways that render him unable to perform even unskilled work. *Id.* at 30-31.

Defendant responds that the ALJ's extensive mental RFC assessment fully accommodated any possible limitations stemming from Plaintiff's alleged mental impairments, and the ALJ had good reason to reject Dr. Mount's opinion that Plaintiff's mental limitations prevented him from working. (Doc. 29 at 11-13). Moreover, he adds, the new evidence submitted to the Appeals Council was irrelevant because it pertained to Plaintiff's medical condition after the ALJ had rendered her decision. *Id.* at 14.

Plaintiff replies that Defendant cannot cure the ALJ's failure to connect her RFC findings to the opinions of the medical sources who averred that Plaintiff was depressed. (Doc. 31 at 4). Moreover, Plaintiff argues, the ALJ's mental RFC impermissibly conflicted with Dr. Cox's and Dr. Mount's assessments of Plaintiff's limitations. *Id.* at 4-6. As for the new evidence that he presented to the Appeals Council, Plaintiff urges that it does relate to the time period during which his case was before the ALJ because Dr. Grable stated that Plaintiff had been limited to approximately the same extent since he began treatment at her facility, which was in September 2009. *Id.* at 7.

*1. Dr. Grable's and Dr. Knapp's Opinions*

As an initial matter, and for the reasons stated by Plaintiff, Dr. Grable's April 2011 medical source statement expressly relates to the time period during which Plaintiff's case was before the ALJ, and the Court will thus consider it in ruling in this case. (Tr. 1129); 20 C.F.R. § 404.970(b) (stating that the Appeals Council must consider new and material evidence submitted to it if it relates to the period on or before the date of the ALJ's decision); *Higginbotham v. Barnhart*, 405 F.3d 332, 337-38 (5th Cir. 2005) (stating that evidence submitted for the first time to the Appeals Council is considered part of the record upon which the Commissioner's final decision is based, and such evidence should be considered by the district court). On the other hand, Dr. Knapp stated that he based his January 2011 opinion on his December 2010 examination of Plaintiff, which is after the ALJ's decision, so the Court will not consider Dr. Knapp's opinion in issuing a decision. (Tr. 916); *Higginbotham*, 405 F.3d at 337-38.

*2. Plaintiff's Ability to do Detailed Work*

Turning to the substance of Plaintiff's arguments, the Court finds merit in his claim that the ALJ erroneously ruled (and the Appeals Council erred in affirming) that he could understand and carry out "detailed, but uninvolved written or oral instructions." That determination is directly contrary to Dr. Cox's, Dr. Mount's, and Dr. Grable's medical opinions and is utterly unsupported by any medical opinion. (Tr. 485, 751, 1128-29); *Ripley*, 67 F.3d at 557-58. Nevertheless, Social Security Ruling 85-15, upon which Plaintiff relies, states that "[t]he basic mental demands of . . . unskilled work include the abilities . . . to understand, carry out, and remember simple instructions." *See also* 20 C.F.R. § 404.1521(b) (stating that basic work activities include "understanding, carrying out, and remembering simple instructions"). In this

case, the ALJ's and Appeals Council's error in finding that Plaintiff could understand and carry out detailed written or oral instructions is harmless because Plaintiff was limited to unskilled work, which does not require that ability. Accordingly, Plaintiff's substantial rights were not affected, and reversal is not warranted on this claim of error. *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988) (holding that "[p]rocedural perfection in administrative proceedings is not required" as long as "the substantial rights of a party have not been affected.").

      *3. Plaintiff's Ability to Respond Appropriately To Changes in a Work Setting*

The Court next considers Plaintiff's argument that the ALJ erred in rejecting Dr. Mount's finding that Plaintiff had a substantial loss in his ability to respond appropriately to changes in a routine work setting, which would preclude him from performing unskilled work. Social Security Ruling 85-15 states that "[t]he basic mental demands of competitive, remunerative, unskilled work include the abilit[y] . . . to deal with changes in a routine work setting." While the ALJ may have acted within her discretion in discounting Dr. Mount's finding that Plaintiff could not comply with this requirement, 20 C.F.R. § 404.1527(c), Plaintiff's treating psychiatrist Dr. Grable made the same finding, yet there is no explanation in the record for the Appeals Council's rejection of her opinion. (Tr. 1128). The only other medical evidence on point is the assessment by non-examining psychologist, Dr. Cox, who opined that Plaintiff had moderate limitations in this regard. (Tr. 486).

Based on its internal procedures, the Appeals Council generally does not need to provide a detailed discussion about all new evidence submitted to it. *Higginbotham*, 405 F.3d at 335 n.1 (referring to a memorandum from the Commissioner's Executive Director of Appellate Operations dated July 1995). Nevertheless, where new medical opinion evidence is so

inconsistent with the ALJ's findings that it undermines the ultimate disability determination, the case should be remanded so that the Appeals Council can fully evaluate the treating source statement as required by law. *Stewart v. Astrue*, 2008 WL 4290917, *4 (N.D. Tex. 2008); *see also Jones v. Astrue*, 2008 WL 3004514, *4-5 (S.D. Tex. 2008) (remand required where the summary denial of a request for review provided no indication that the Appeals Council evaluated the treating source statement as required by SSR 96-5); *Green v. Astrue*, 2008 WL 3152990, * 7-9 (N.D. Tex. 2008) (remand required where the summary denial of a request for review provided no indication that the Appeals Council evaluated the treating source statement pursuant to 20 C.F.R. § 404.1527); *Stevenson v. Astrue*, 2008 WL 1776504, *3-4 (N.D. Tex. 2008) (same); *cf.* SSR 96-5 (providing that adjudicators must weigh medical source statements and RFC assessments and "provide appropriate explanations for accepting or rejecting such opinions"). This caselaw also finds support in 20 C.F.R. § 404.1527(e)(3), which requires that when the Appeals Council makes a decision, it must follow the same rules for considering medical opinion evidence that ALJs follow.

In the case at bar, Dr. Grable's opinion that Plaintiff is substantially limited in his ability to respond appropriately to changes in a routine work setting conflicts with the Appeals Council's finding on summary affirmance that Plaintiff is capable of performing a range of unskilled, sedentary work, which requires that ability. SSR 85-15 (1985). Moreover, there is no other medical opinion of record to support the ALJ's decision or the Appeals Council's affirmance that Plaintiff has that particular ability. *Ripley*, 67 F.3d at 557-58. Accordingly, remand is required on this ground. *Stewart*, 2008 WL 4290917 at *4.

    *4. Dr. Grable's Opinion About Plaintiff's Other Limitations*

The undersigned also finds merit in Plaintiff's final argument that he is incapable of even unskilled work based on Dr. Grable's determination that he is substantially limited in his abilities to (1) carry out simple instructions; (2) maintain attention and concentration for extended periods; (3) accept instructions and respond appropriately to criticism from supervisors; and (4) get along with co-workers without distracting them. The definition of basic work activities requires that a claimant be able to understand and carry out simple instructions and respond appropriately to supervision, and Dr. Grable opined that Plaintiff is substantially limited in these areas. (Tr. 1127-28); 20 C.F.R. §§ 404.1521(b)(3), (5), 416.921(b)(3), (5). Further, the basic mental demands of competitive, unskilled work include the additional abilities to respond appropriately to coworkers and to typical work situations. SSR 85-15 (1985). Dr. Grable felt that Plaintiff suffered from substantial limitations in these areas as well. A substantial loss in a claimant's ability to meet any of these basic work-related activities severely limits the potential occupational base. *Id.* Moreover, the Appeals Council pointed to no contradictory medical evidence in the record to refute Dr. Grable's opinion. *Ripley*, 67 F.3d at 557-58; *Stewart*, 2008 WL 4290917 at *4. Indeed, Dr. Grable's assessment finds some support in Dr. Cox's opinion that Plaintiff has moderate limitations in all of those areas. (Tr. 485-86, 1128). Accordingly, this case must be remanded for further consideration in light of Dr. Grable's treating source opinion. *Stewart*, 2008 WL 4290917 at *4.

## IV.  CONCLUSION

For the reasons discussed herein, Plaintiff's *Motion for Summary Judgment* (Doc. 27) is **GRANTED**, Defendant's *Motion for Summary Judgment* (Doc. 30) is **DENIED**, the Commissioner's decision is **REVERSED,** and this case is **REMANDED** for further proceedings consistent with this opinion.

**SO ORDERED** on June 21, 2012.

_____
RENÉE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE